CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

6/20/2024

LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| **CALVIN WESLEY** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE CITY OF LYNCHBURG** | ) |
| | ) |
| **and** | ) |
| | ) |
| **LPD OFFICER SETH REED** | ) |
| *in his individual capacity* | ) |
| | ) |
| *Defendants.* | ) |

**CASE No.:** ___6:24CV00032___

## COMPLAINT[1]

    **COMES NOW** the Plaintiff, Calvin Wesley, and brings this civil rights action to recover damages arising from the injuries he sustained when his Fourth Amendment rights were violated during his apprehension and arrest by officers of the Lynchburg Police Department on or about March 11, 2021 and again on or about December 20, 2021. Plaintiff asserts federal claims pursuant to 42 U.S.C. § 1983 for excessive force and malicious prosecution as well as common law civil claims for (i) assault, (ii) battery, (iii) intentional infliction of emotional distress and (iv) gross negligence and (v) willful, wanton and reckless negligence.

---

[1] This Complaint is being refiled after dismissal without prejudice by stipulation of the parties in Case No.: 6:22cv00031 and contains a new count alleging malicious prosecution.

## JURISDICTION AND VENUE

1.      This action arises under federal law and the Fourth Amendment to the United States

Constitution.

2.      This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C.

§§ 1983 and 1985.

3.      This Court has supplemental jurisdiction over the state claims asserted in this action

pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this district under 28 U.S.C. §1391(b), because (i) each of the named

defendants is a resident of the Western District of Virginia pursuant to 28 U.S.C. § 1391(c)(2),

and (ii) pursuant to 28 U.S.C. § 1391(b)(2) all of the events or omissions giving rise to the claims

occurred in the City of Lynchburg in the Western District of Virginia.

## PARTIES

5.      Plaintiff Calvin Wesley ("WESLEY") is a resident of the City of Lynchburg.

6.      Defendant CITY OF LYNCHBURG is a city incorporated pursuant to the laws of the

Commonwealth of Virginia. The City of Lynchburg operates the Lynchburg Police Department

("LPD").

7.      Defendant Officer Seth Reed ("REED") is a police officer employed by the Lynchburg

Police Department.

## FACTS

### I. Misdemeanor Arrest on March 11, 2021

8.      The use of force described below was captured on body worn camera and dashcam video

recordings.

9.      At no time on March 11, 2021, did WESLEY assault or batter any person.

10.     At no time on March 11, 2021, did WESLEY apply force to any person.

11.     REED had a prior history with WESLEY involving an incident during which REED claimed that WESLEY assaulted him.

12.     In addition to two separate incidents involving WESLEY, REED has a history of deploying Knox to bite at least two other unarmed subjects, one whom was suspected only of committing misdemeanor crimes and another who was not suspected of committing any crime at all, but who was simply a passenger who ran away from a traffic stop.

13.     On March 10, 2021, just a day before this incident, REED deployed the police dog Knox to bite an unarmed fleeing subject who was suspected of committing only misdemeanor crimes.

14.     On May 30, 2021, REED deployed the police dog Knox to bite an unarmed passenger in a car that was stopped for a driver's license violation, simply because the passenger, who was not suspected of having committed any crime, ran from the scene of the traffic stop.

15.     In each of the prior cases described above, Knox, acting on REED's command, injured both of the subjects to the point of requiring emergency medical care at the hospital.

16.     During the afternoon of March 11, 2021, REED overheard a radio report that some other Lynchburg Police Department officers were going to executed a misdemeanor arrest warrant against WESLEY on Grace Street in the City of Lynchburg, Virginia.

17.     On March 11, 2021, WESLEY was staying briefly at that address.

18.     Based upon his prior interaction with WESLEY, and acting out of revenge, REED took it upon himself to respond to scene of the planned arrest along with a police dog named "Knox."

19.     REED was Knox's handler.

20.     Soon after REED arrived at the address on Grace Street, WESLEY entered the passenger side of his landlady's pickup truck, which was parked in front her house on Grace Street.

21.     REED ran toward the pickup truck with the police dog Knox running by his side on a leash.

22.     According to the recording made by his body worn camera, REED arrived at the passenger door of the pickup truck at 13:13:25.

23.     When REED arrived at the passenger side of the pickup truck, WESLEY was sitting in the passenger seat and his landlady was in the driver's seat.

24.     At 13:13:27, REED asked WESLEY to step out of the vehicle and notified him that there was a warrant for his arrest.

25.     WESLEY stated that he did not mind getting out of the truck, but that he wanted to know why he was being arrested.

26.     WESLEY cooperated and exited the vehicle at 13:13:32, five seconds after first being instructed to do so.

27.     Lynchburg Police Officers Chase Bryant and Thomas Hall arrived 13:13:42, they placed hands on WESLEY, again notifying him that that there was an outstanding warrant for his arrest.

28.     WESLEY was unarmed.

29.     WESLEY questioned the officers about why he was being arrested, and REED and the other police officers continued to refuse to notify him of the nature of the warrant.

30.     REED and the other police officers gave WESLEY conflicting instructions (telling him at different time to place his hands on the truck and to place his hands behind his back) and, despite

his confusion, WESLEY did his best to comply with the police officers in the face of these conflicting instructions.

31.      At 13:13:44, acting jointly and in concert, REED and other LPD officers cornered WESLEY into the hinge joint of the open truck door, with no path of egress or escape, in the position depicted in IMAGE 1 below, a screenshot taken from REED's bodycam video recording.



**IMAGE 1**

32.    While Officer Chase Bryant held WESLEY's left arm and while Officer Thomas Hall held WESELY's right arm, REED, holding police dog Knox on a leash, took a position behind Officers Bryant and Hall

33.    WESLEY repeatedly asked the officers to inform him of the charges against him, and the officers refused to do so.

34.    At 13:14:00 Officer Bryant asked the other police officers to provide him handcuffs and once he was provided handcuffs, Officer Bryant and the other officers attempted to handcuff WESLEY.

35.    WESELY struggled against being handcuffed, and at 13:13:59, he complained that the officers were hurting him.

36.    At 13:14:04, while WESLEY was complaining about pain the officers were causing to his shoulder, REED threatened to deploy the police dog to bite WESLEY unless WESLEY stopped "fighting."

37.    While he was resisting being handcuffed without explanation by the officers, WESLEY was not fighting anyone at that time and did not so at any time on March 11, 2021.

38.    None of the officers present on the scene requested the assistance REED or the police dog in apprehending WESLEY.

39.    Lynchburg Police Officer John Person arrived at the scene near the pickup truck at 13:14:08 and took a position on the opposite side of the passenger door of the pickup truck, facing WESLEY, who was pinned against the door.

40.    Lynchburg Police Officer Micah McLeod arrived at the scene near the pickup truck at 13:14:15 and took a position next to officer Hall.

41.     By 13:14:15, there were five uniformed Lynchburg Police Department officers surrounding WESLEY, including REED and Officers Bryant, Hall, Person and McLeod.

42.     Each of the uniformed officers present at the scene had received special training in use of physical force against subjects.

43.     Each of the uniformed officers present at the scene was equipped with a baton, a Taser and pepper spray.

44.     WESLEY continued to complain about pain to his shoulder until one of the police officers finally adjusted his grasp on WESLEY's arm.

45.     At 13:14:22, WESLEY thanked the officers for adjusting their grasp on him.

46.     WESLEY continued to struggle against being handcuffed and he continued to question the officers about the reason for his arrest.  The officers, without explanation, refused to answer him.

47.     No law, policy or any exigent condition existed that prohibited the officers from courteously and professional informing WESLEY that he was being arrested only on a misdemeanor warrant, but the officers steadfastly refused to do so.

48.     At 13:14:44, REED instructed the other police officers to get away from the pickup truck so that he could order the police dog to bite WESLEY.

49.     At 13:14:45, WESLEY was completely surrounded and pinned in on all sides by the five police officers, as seen below in IMAGE 2, taken from a screenshot of REED's bodycam video recording:



**IMAGE 2**

50.     When REED made the decision to deploy the police dog to bite WESLEY on March 11,

2021, there no objectively reasonable need to do so.

51.     When REED made the decision to deploy the police dog to bite WESLEY on March 11,

2021, the officers had engaged with WESLEY for only about one minute.

52.     When REED made the decision to deploy the police dog to bite WESLEY on March 11,

2021, none of the officers had been harmed or threatened by WESLEY.

53.     When REED made the decision to deploy the police dog to bite WESLEY on March 11,

2021, WESLEY's left wrist had been cuffed and the officers were in control of his right arm and

were in the process of cuffing it.

54.     When REED made the decision to deploy the police dog to bite WESLEY on March 11,

2021, none of the officers required assistance from REED or from a police dog.

55.     When REED made the decision to deploy the police dog to bite WESLEY there were no

outstanding felony warrants against WESLEY.

56.     When REED made the decision to deploy the police dog to bite WESLEY, WESLEY

was not attempting to escape.

57.     When REED made the decision to deploy the police dog to bite WESLEY, WESLEY did

not pose a threat of harm to anyone.

58.     At 13:14:48, having made the decision to deploy the police dog to bite WESLEY, REED

pushed the other officers to the side and ordered the police dog Knox (in German) to bite

WESLEY.

59.     At 13:14:51, the police dog Knox began to bite WESLEY as depicted in IMAGE 3

below, taken from a screenshot of REED's bodycam video recording.



**IMAGE 3**

60.     While the police dog Knox repeatedly bit into WESLEY's flesh at REED's command, the other police officers forced WESLEY facedown to the sidewalk next to the pickup truck.

61.     As depicted below in IMAGE 4, taken from a screenshot of REED's bodycam video recording, at 13:14:57, WESLEY was face down on the sidewalk, pinned against a chain link fence, with his arms behind his back and surrounded by armed police officers as the police dog continued to bite him:



**IMAGE 4**

62.     REED continued to command the police dog KNOX to bite WESLEY while WESLEY was laying unarmed and face-down on the sidewalk, with his hands behind his back, surrounded by five armed police officers and constrained by a chain link fence.

63.     REED did not command the police dog Knox to release WESLEY until 13:15:03.

64.     When REED eventually commanded the police dog Knox to release WESLEY at

13:15:03, the dog disobeyed and continued to bite WESLEY.

65.     REED issued four commands and two corrections to the police dog Knox before the dog

finally released WESLEY at 13:15:06.

66.     WESLEY was severely bitten by Knox, as depicted in IMAGE 5 and IMAGE 6 below:

      

**IMAGE 5**                                          **IMAGE 6**

67.     WESLEY was transported to the hospital and treated for his injuries.

68.     After WESLEY was handcuffed and in custody, REED gave two false accounts of the

incident.

69.     REED first reported to dispatch that WESLEY had assaulted a couple of officers.

70.     REED later told Officer Bauserman, who arrived after WESLEY was handcuffed, that REED did not know if any other officers had been assaulted.

71.     In fact, REED was never assaulted and even though REED took out a false assault charge against WESLEY, the prosecution declined to prosecute that charge and it was dismissed.

72.     Lt. Brian Smith arrived on the scene shortly after WESLEY was handcuffed for the ostensible purpose of conducting a use of force investigation, but as he arrived at the scene, he can be heard on both his dashcam and bodycam recordings making mocking comments about WESLEY's injuries.

73.     The use of force investigation was a farce, as it exonerated REED despite the fact that REED ordered the dog to continue biting WESLEY while he was face-down on the sidewalk and despite the fact that WESLEY never posed the threat necessary to deploy a dog under existing

74.     The LPD use of force policy that was applicable at the time clearly stated that use of a canine can be an application of deadly force.

75.     The LPD use of force policy that was applicable at the time clearly stated that the use of a canine was prohibited when no physical threat or violence appeared imminent.

76.     The use of the police dog against WESLEY was objectively unreasonable.

77.     At the time when the police dog was deployed against WESLEY, no crime was ongoing and no severe crime had been committed.  Instead, WESLEY was merely the subject of an outstanding misdemeanor warrant.

78.     At the time when the police dog Knox was deployed against WESLEY, no physical threat or violence existed as WESLEY was unarmed and was surrounded by armed police officers who had him physically restrained until he was handcuffed.

79.     At the time when the police dog was deployed against WESLEY, he was not fleeing nor was he actively resisting arrest, other than by demanding to know why he was being arrested.

80.     The use of the police dog against WESLEY was deliberate, sadistic, malicious and cruel.

81.     REED deployed the police dog against WESLEY in retaliation for a past incident involving WESLEY.

82.     REED had a duty to avoid and prevent the use of excessive force against WESLEY.

83.     In addition to arresting WESLEY for the outstanding misdemeanor warrant, on March 11, 2021, REED also falsely charged WESLEY with felony Assault and Battery on a Law Enforcement Officer.

84.     On December 14, 2022, the felony assault charge against WESLEY was dismissed on the prosecution's motion to *nolle prosequi* that charge.

85.     WESLEY suffered damages as result of being bitten on March 11, 2021, including severe pain, severe emotional distress, permanent scarring, humiliation and fear.

86.     The excessive force used by REED was a direct and proximate cause of WESLEY's damages.

87.     At all times on March 11, 2021 pertinent to this Complaint, REED was acting under color of state law.

**II. Excessive Force on December 20, 2021**

88.     This use of force was also recorded on dashcam video.

89.     Less than ten months after REED used his police dog to unlawfully bite WESLEY on March 11, 2021, at approximately 9:00 p.m. on December 20, 2021, it was reported to the

Lynchburg Police Department that WESLEY and his wife were having argument at his wife's apartment in the City of Lynchburg.

90.     At all times on December 20, 2021, WESLEY was unarmed.

91.     At no time on December 20, 2021 did WESLEY threaten anyone.

92.     At approximately 9:20 p.m. on December 20, 2021, REED responded to the area based on the reported domestic disturbance involving WESLEY.

93.     WESLEY was not present when the police arrived at his wife's apartment, but he saw the police arriving and left the area to avoid them.

94.     There was an outstanding misdemeanor arrest warrant against WESLEY at the time.

95.     There was also a protective order existing at that time that prevented contact between WESLEY and his wife.

96.     REED, joined and assisted by other LPD officers, began to look for WESLEY.

97.     WESLEY, who was unarmed, made his way through the woods behind the Anthony Place apartment complex in Lynchburg and toward the Kwik Stop convenience store on Old Forest Road in an effort to avoid the police.

98.     REED brought the police dog Knox with him to the scene specifically in anticipation of deploying Knox against WESLEY.

99.     REED began to pursue WESLEY through the wooded area.

100.    REED reached a point approximately 40 yards from WESLEY's position in the woods. REED was accompanied by police dog Knox who was leashed at the time.

101.    REED could not positively identify WESLEY in the dark and through the trees and bushes.

102.    REED called out to WESLEY to stop, but WESLEY refused to do so and kept walking toward the Kwik Stop store.

103.    REED announced that he would let the police dog loose unless WESLEY stopped.

104.    WESLEY exited the wooded area, reached a street and hailed a passing car.

105.    The car stopped and WESLEY attempted to enter the back seat of the car.

106.    REED released the police dog Knox from the leash and commanded the dog to bite WESLEY.

107.    The police dog Knox began biting WESLEY's arm before WESLEY could enter the car, as depicted in IMAGE 7 below, a screenshot taken from REED's bodycam video recording.



**IMAGE 7**

108.    The car drove away from the scene, leaving WESLEY on the street being bitten by the police dog.

109.    At the time REED released Knox on December 20, 2021, there were no outstanding warrants against WESLEY.

110.    At the time REED released Knox on December 20, 2021, WESLEY was unarmed and there had been no report made to anyone that WESLEY was armed.

111.    At the time REED released Knox on December 20, 2021, there had been no report that WESLEY had been violent or that he had hurt anyone.

112.    At the time REED released Knox on December 20, 2021, there was no violent crime afoot and no evidence that any violent crime had occurred.  At most, REED had probable cause to arrest WESLEY for a suspected misdemeanor.

113.    At the time REED released Knox on December 20, 2021, WESLEY posed no physical threat to anyone and he was not acting violently.

114.    WESLEY had the right to run from REED because he knew REED would use excessive force against him by deploying the police dog to bite him.

115.    When Knox lunged at WESLEY, bit and held onto his right forearm, the bite caused puncture wounds and deep lacerations into the muscles of WESLEY's arm and wrist, and causing WESLEY excruciating pain and anguish.  These injuries are depicted below in IMAGE 8 and IMAGE 9.




**IMAGE 8**

116.    REED, acting sadistically and maliciously, allowed Knox to continue to bite WESLEY for more than half a minute when there was no legitimate reason to do so.

117.    REED sicced the police dog on WESLEY out of revenge and in retaliation seek for past incidents he had experienced involving WESLEY.

118.    At the time REED released Knox and even while Knox was biting WESLEY, REED suspected, but was not sure, that the person being bitten was actually WESLEY.

119.    WESLEY, writhing in pain as Knox bit deeply into his forearm, attempted vainly to bat Knox away from him with his free hand for several minutes while several other police officers conversed at a distance.

120.    After an unreasonable delay, REED finally ordered Knox to release WESLEY, but then arrested WESLEY for misdemeanor Fleeing from Law Enforcement and for feloniously Attempting to Maim or Kill a Law Enforcement Animal[2].  BRYANT took out a misdemeanor warrant against WESLEY for Violation of a Protective Order.

121.    REED had the duty to avoid, and to prevent, the use of excessive force against WESLEY.

122.    REED did not give even slight care to avoid injuring WESLEY by deployment of the police dog.  While REED notified WESLEY that he intended to release the police dog to bite WESLEY, his statements do not amount to "care" since REED had no justification for releasing the dog in the first place.

123.    After WESLEY was arrested, and before WESLEY was afforded medical treatment, when WESLEY misidentified one of the LPD officers surrounding him, Officer Person joked

---

[2] The felony charge was amended to a misdemeanor as part of a plea bargain and WESLEY plead guilty to two misdemeanors.

that "all white cops look alike" in order to mock WESLEY in front of the other officers in a racist manner.

124.    At all times on December 20, 2021 pertinent to this Complaint, REED was acting under color of state law.

125.    WESLEY was transported to Lynchburg General Hospital for treatment of his wounds, where he required debridement of the right forearm, received twenty-seven stitches and was admitted for two days.

126.    WESLEY suffered damages as result of being bitten by the police dog on December 20, 2021, including severe pain, severe emotional distress, permanent nerve damage, permanent scarring, humiliation and fear.

127.    The use of excessive force against WESLEY on December 20, 2021 by REED was a direct and proximate cause of WESLEY's damages.

### III.  LPD Policies, Customs and Practices

128.     The Lynchburg Police Department maintains facially constitutional policies, but these policies are routinely ignored in custom and in practice.

129.    In fact, upon information and belief, the use of force against WESLEY was not documented, processed or investigated according to LPD policy.

130.    Indeed, LPD utterly ignored the Lynchburg Public Defender's discovery request for these Use of Force reports in WESLEY's criminal prosecution.

131.     The following specific examples demonstrate the LPD's unconstitutional customs or practices.

a.   Upon information and belief on March 29, 2001, Craig Morris was sprayed with pepper spray and then struck several times by officers of the Lynchburg Police Department. The officers were allegedly putting Mr. Morris under arrest for using the term "f_ck", and Mr. Morris did not resist arrest or use any force against the officers, but nevertheless was beaten by said officers of the Lynchburg Police Department;

b.   Upon information and belief on October 18, 2013, Montavious Wells and Tramane Green were injured by officers of the Lynchburg Police Department when they were tasered and beaten by officers for allegedly getting smart when asked to identify what high school they went to. Neither Mr. Wells nor Mr. Green threatened the officers, threatened to flee from the officers, or posed a danger to any officers or the public;

c.   Upon information and belief on January 23, 2016, George Brown was injured when officers of the Lynchburg Police Department ordered the police K9 to attack Mr. Brown, while Mr. Brown was not resisting arrest or presenting any threat to the officers; On February 4, 2016, officers of the LPD stopped and tackled Tershaud Rose, who had committed no crime, drove his head into the pavement and held him down while a hospital security guard scarred his back with a taser, before manufacturing false charges against Rose as a cover-up;

d.   Upon information and belief on February 11, 2016, Brandon Sandifer was injured when officers of the Lynchburg Police Department broke his leg during an arrest at his home for  trespassing, thereby using unreasonable and excessive force;

e.   Upon information and belief on November 28, 2016, Donald Lipford was injured when officers of the Lynchburg Police Department struck him several times and ordered the

police K9 to attack Mr. Lipford, while he was not resisting arrest or presenting any threat to the officers;

f.   Upon information and belief on November 5, 2017, Pamela Webber was shot and killed by officers of the Lynchburg Police Department, when they were called to her residence on allegations that she was suicidal and had a knife. After barricading herself in her room, Ms. Webber was convinced to come out by officers of the Lynchburg Police Department, and they shot her alleging that she "advanced" with the knife on the officer;

g.   Upon information and belief on February 17, 2018, Walker Sigler was shot by officers of the Lynchburg Police Department, while he was in his home, committing no crime, not presenting a threat to the officers, was unarmed, and not attempting to flee the officers;

h.   On July 18, 2018, LPD officers used a police canine against Larry Booker without justification, thereby causing him injuries;

i.   Upon information and belief on December 12, 2018, Michelle Jefferson was injured by officers of the Lynchburg Police Department while they were serving a warrant on her at her home. She was grabbed and assaulted by the officers and charged with assault on law enforcement;

j.   Upon information and belief on December 30, 2018, Malik Andrews was shot by officers of the Lynchburg Police Department after officers saw him with a rifle on his shoulder;

k.  Upon information and belief on March 30, 2019, Thyanna Trent was assaulted and injured by officers of the Lynchburg Police Department, while allegedly trespassing while walking toward the exit at the River Ridge Mall in Lynchburg;

l.  Upon information and belief on June 16, 2019, Brian Anderson was injured by officers of the Lynchburg Police Department for allegedly obstructing justice. Mr. Anderson was pulled out of his truck and thrown to the ground, had officers hold him down by their knees, while other officers yanked his arms, causing injury to his shoulders;

m.  Upon information and belief on July 3, 2019, Mario Jackson was injured by officers of the Lynchburg Police Department after he was stopped for an alleged "window tint violation." After having Mr. Jackson exit his vehicle the officers grabbed him and slammed him against the car, threw him to the ground, then beat him while he begged the officers to stop;

n.  Upon information and belief on March 7, 2020, Aniyah Hicks was injured by officers of the Lynchburg Police Department, requiring her to receive seven stitches to close a gash above her eye, when she was assaulted, thrown to the ground, then had her face mashed to the ground by Officer Godsie, while she was presenting no danger to any officer or the public, was not attempting to flee, and was breaking no law, other than being present at a fight

132.  According to a September 1, 2019, article by Richard Chumney of the Lynchburg News and Advance, in 2016 police in Virginia failed to properly report 60% of officer involved shootings, 30% in 2017, and 19% in 2018, including the shooting of Walter Sigler.

133.    It is obvious that LPD has failed to properly train its officers in the use of force because of the multitude of instances in which officers have used force in violation of policy.

134.     It is clear that an obvious lack of training has caused LPD officers to believe that a police dog can be used to secure an unarmed fleeing suspect, including a suspect wanted only on a misdemeanor warrant, and who poses no imminent threat, and in contradiction to LPD policy, which clearly states that a police dog can constitute deadly force and that a police dog cannot be used in this manner.

135.    Upon information and belief, the uses of force against WESLEY by REED on March 11, 2021 and December 20, 2021 were reported and investigated by LPD, but none of the officers were disciplined or counseled.  Thus, the City of Lynchburg has ratified the unconstitutional customs and practices of its officers.

<u>**COUNT ONE**</u>

**VIOLATION OF CIVIL RIGHTS: EXCESSIVE FORCE BY OFFICER REED IN DEPLOYING A K-9 UNIT WHILE APPREHENDING PLAINTIFF FOR A MISDEMEANOR WARRANT ON MARCH 11, 2021**

**(42 U.S.C. § 1983 - 4th and 14th Amendments)**

136.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

137.    At all times relevant, Plaintiff was a citizen of the United States and of the Commonwealth of Virginia, and had a clearly established right under the Fourth and Fourteenth Amendments of the U.S. Constitution, to be free from the use of excessive force against him.

138.    Defendant City of Lynchburg is responsible for the conduct of its police officers acting in the course and scope of their employment.

139.    All of the Defendant officers were acting in the course and scope of their employment when they apprehended and arrested the Plaintiff with engagement of a K-9 unit on March 11, 2021.

140.    REED, while acting under color of state law, conducted an unreasonable seizure of WESLEY by employing excessive force to physically restrain Plaintiff in violation of his clearly established Fourth and Fourteenth Amendment rights by allowing his K-9 unit to attack, bite, and maul WESLEY's upper thigh and buttocks multiple times during the same arrest, even though WESLEY was unarmed, was not resisting arrest, was not fleeing law enforcement, and did not otherwise pose a danger to himself or others. WESLEY was wanted only for a misdemeanor warrant.  REED's actions to allow and order his K-9 unit to continue to attack WESLEY repeatedly during his arrest for a misdemeanor crime was excessive and had no conceivable justification or purpose.

141.    REED had no reason to believe that WESLEY posed any threat to anyone.

142.    Any reasonable officer in the same situation should have recognized that the manner in which WESLEY was apprehended for a misdemeanor warrant, one that was not even disclosed to WESLEY at the time of his arrest, was excessive and a violation of WESLEY's Constitutional rights.

143.    No extraordinary situation existed at the time of WESLEY's apprehension on March 11, 2021 that justified the severe and extraordinary force that was used against him by REED. The use of force by REED in arresting WESLEY was disproportional and unreasonable.

144.     As a direct and proximate result of REED's actions in ordering his K-9 unit to attack WESLEY multiple times during the same arrest, WESLEY suffered significant physical, mental, and emotional harm.

## COUNT TWO

### VIOLATION OF CIVIL RIGHTS: EXCESSIVE FORCE BY OFFICER REED IN DEPLOYING A K-9 UNIT WHILE APPREHENDING PLAINTIFF ON DECEMBER 20, 2021

### (42 U.S.C. § 1983 - 4th and 14th Amendments - Reed)

145.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

146.     At all times relevant, WESLEY was a citizen of the United States and of the Commonwealth of Virginia, and had a clearly established right under the Fourth and Fourteenth Amendments, to be free from the use of excessive force against him.

147.     Defendant CITY OF LYNCHBURG is responsible for the conduct of its police officers acting in the course and scope of their employment.

148.     All of the Defendant officers were acting in the course and scope of their employment when they apprehended and arrested WESLEY with assistance of a K-9 unit on December 20, 2021.

149.     Defendant REED, while acting under color of state law, conducted an unreasonable seizure of WESLEY by employing excessive force to physically restrain WESLEY in violation of his clearly established Fourth and Fourteenth Amendment rights by allowing the police dog to attack, bite, and maul WESLEY's right forearm, even though WESLEY was unarmed, was not resisting arrest and did not otherwise pose a danger to himself or others.

150.    REED's actions to allow and order the police dog to continue to bite and hold WESLEY's forearm for several minutes during his arrest for a crime WESLEY did not commit was excessive and had no conceivable justification or purpose.

151.    REED had no reason to believe that WESLEY posed any threat and had not positively identified WESLEY prior to unjustifiably siccing the police dog on him.

152.    Any reasonable officer in the same situation should have recognized that the use of severe force against a person who had not committed any crime, was excessive and a violation of WESLEY's Constitutional rights.

153.    No extraordinary situation existed at the time of WESLEY's apprehension on December 20, 2021 that justified the severe and extraordinary force that was used against him by REED.

154.     As a direct and proximate result of REED's actions in ordering his K-9 unit to attack WESLEY multiple times during the same arrest, WESLEY suffered significant physical, mental, and emotional harm.

155.    WESLEY is entitled to recover (a) reasonable and appropriate compensatory damages, (b) punitive damages, (c) costs, expenses and reasonable attorney's fees, and (d) such other and further relief as this Court deems necessary and proper.

## COUNT THREE

### VIOLATION OF CIVIL RIGHTS – MALICIOUS PROSECUTION BY REED

### (42 U.S.C. § 1983 - 4th and 14th Amendments – Reed)

156.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

157.    REED created false evidence against WESLEY almost immediately after arresting him. He gave conflicting false accounts to dispatch and Officer Bauserman within minutes of arrest.

158.    WESLEY never assaulted anyone on March 11, 2021.

159.    REED nevertheless, lacking probable cause, obtained a felony arrest warrant on March 11, 2021 against WESLEY alleging that WESLEY assaulted REED.

160.    This allegation is patently and plainly refuted by the multiple bodycam recordings of the incidents.

161.    REED has a pattern of maliciously prosecuting the subjects he arrests - he similarly created false evidence to charge Shanta Brown with felony assault and prosecuted this charge for three years.

162.    WESLEY was arrested on the felony charge on March 11, 2021 and spent three months in jail before making bail.

163.    WESLEY endured onerous and restrictive conditions of bail until the felony charge was dismissed by the Lynchburg Circuit Court on December 14, 2022.

164.    REED continued his malicious prosecution of WESLEY for more than a year.

165.    The malicious prosecution by REED was a direct and proximate cause of WESLEY's injuries.

166.    REED acted with conscious disregard of WESLEY's right to be free from unlawful seizure under the Fourth Amendment to the United States Constitution when he maliciously prosecuted WESLEY as previously described.

167.    REED acted with conscious disregard of WESLEY's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution when he maliciously prosecuted WESLEY as previously described.

168.    REED acted with actual malice when he maliciously prosecuted WESLEY as previously described.

169.    The malicious prosecution of WESLEY by REED was terminated in WESLEY's favor by dismissal after the Commonwealth's motion for *nolle prossequi*.

## COUNT FOUR

### MUNICIPAL LIABILITY OF THE CITY OF LYNCHBURG – UNCONSTITUTIONAL CUSTOM OR PRACTICE -  MARCH 11, 2021 EXCESSIVE FORCE

### (42 U.S.C. § 1983 - 4th and 14thAmendments)

170.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

171.    The LPD maintains a facially constitutional policy that limits to use of police canines to cases in which a physical threat or violence is imminent.

172.    However, by pattern of conduct as described above, LPD officers routinely engage in unconstitutional customs and practices regarding excessive use of force in general, and excessive and unreasonable use of force by police dogs in particular.

173.    LPD officers routinely fail to follow their facially constitutional policies by engaging in the unconstitutional custom of using excessive force.

174.    The CITY OF LYNCHBURG has been put directly on notice of the existence and extent of the unconstitutional custom of using excessive force through lawsuits, complaints, press coverage and investigations, but has done nothing to end the custom.

175.    The CITY OF LYNCHBURG has acted with deliberate indifference to the constitutional rights of its residents and citizens to be free from unreasonable use of force by LPD officers and police dogs in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

176.    The CITY OF LYNCHBURG permits its police officers to engage in the unconstitutional custom of deploying police dogs to pursue and apprehend subjects who pose no imminent threat of harm.

177.    The unconstitutional custom of deploying police dogs to pursue and apprehend subjects who pose no imminent threat of harm was a moving force behind the injuries WESLEY suffered after being savagely bitten by the police dog Knox on March 11, 2021.

178.    As a result of the use of police dog Knox on March 11, 2021 according to the unconstitutional custom of deploying police dogs to pursue and apprehend subjects who pose no imminent threat of harm, WESLEY suffered injuries and incurred damages as previously described.

179.    WESLEY is entitled to recover compensatory damages, costs, reasonable attorney's fees and such other relief as this Court deems appropriate from the CITY OF LYNCHBURG for the damages he sustained on March 11, 2021 by LPD officers acting in accordance with the unconstitutional custom of allowing police dogs to attack and bite subjects who do not pose an imminent threat of harm.

## <u>COUNT FIVE</u>

**MUNICIPAL LIABILITY OF CITY OF LYNCHBURG – UNCONSTITUTIONAL CUSTOM OR PRACTICE -  DECEMBER 20, 2021 EXCESSIVE FORCE**

**(42 U.S.C. § 1983 - 4th and 14th Amendments)**

180.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

181.    The LPD maintains a facially constitutional policy that limits to use of police canines to cases in which a physical threat or violence is imminent.

182.    However, by pattern of conduct as described above, LPD officers routinely engage in unconstitutional customs and practices regarding excessive use of force in general, and excessive and unreasonable use of force by police dogs in particular.

183.    LPD officers routinely fail to follow their facially constitutional policies by engaging in the unconstitutional custom of using excessive force.

184.    The CITY OF LYNCHBURG has been put directly on notice of the existence and extent of the unconstitutional custom of using excessive force through lawsuits, complaints, press coverage and investigations, but has done nothing to end the custom.

185.    The CITY OF LYNCHBURG has acted with deliberate indifference to the constitutional rights of its residents and citizens to be free from unreasonable use of force by LPD officers and police dogs in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

186.    The CITY OF LYNCHBURG permits its police officers to engage the unconstitutional custom of deploying police dogs to pursue and apprehend subjects who pose no imminent threat of harm.

187.    The unconstitutional custom of deploying police dogs to pursue and apprehend subjects who pose no imminent threat of harm was a moving force behind the injuries WESLEY suffered after being savagely bitten by the police dog Knox on December 20, 2021.

188.    As a result of the use of police dog Knox on December 20, 2021 according to the unconstitutional custom of deploying police dogs to pursue and apprehend subjects who pose no imminent threat of harm, WESLEY suffered injuries and incurred damages as previously described.

189.    WESLEY is entitled to recover compensatory damages, costs, reasonable attorney's fees and such other relief as this Court deems appropriate from the CITY OF LYNCHBURG for the damages he sustained on December 20, 2021 by LPD officers acting in accordance with the unconstitutional custom of allowing police dogs to attack and bite subjects who do not pose an imminent threat of harm.

### COUNT SIX

**MUNICIPAL LIABILITY OF CITY OF LYNCHBURG – FAILURE TO TRAIN  -
MARCH 11, 2021 USE OF EXCESSIVE FORCE**

**(42 U.S.C. § 1983 - 4th and 14th Amendments)**

190.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

191.    The use of a police canine can amount to the application of deadly force.

192.    The need to train police officers in the constitutional limits of handling and deploying police canines in the pursuit and apprehension of subjects is obvious.

193.    The LPD maintains a facially constitutional policy that limits to use of police canines to cases in which a physical threat or violence is imminent.

194.    However, as evidenced by the facts alleged previously and by the conduct in the instant case, the LPD officers are not adequately trained to comply with their own facially constitutional use of force policy.

195.    The lack of training of LPD officers in the constitutional limits of the use of force was a moving force behind the injuries WESLEY suffered when he was viciously bitten by a police dog on March 11, 2021.

196.    As a result of the unconstitutional use of police dog Knox on March 11, 2021 due to the deliberately indifferent failure to train LPD officers in the constitutional limits of the use of police dogs in the pursuit and apprehension of subjects who do not pose an imminent threat of harm, WESLEY suffered injuries and incurred damages as previously described.

197.    WESLEY is entitled to recover compensatory damages, costs, reasonable attorney's fees and such other relief as this Court deems appropriate from the CITY OF LYNCHBURG due to the injuries he suffered on March 11, 2021 as result of the deliberately indifferent failure of the LPD to train its police officers in the constitutional limits of use of force.

## COUNT SEVEN

### MUNICIPAL LIABILITY OF CITY OF LYNCHBURG – FAILURE TO TRAIN   - DECEMBER 20, 2021 USE OF EXCESSIVE FORCE

### (42 U.S.C. § 1983 - 4th and 14th Amendments)

198.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

199.    The use of a police canine can amount to the application of deadly force.

200.    The need to train police officers in the constitutional limits of handling and deploying police canines in the pursuit and apprehension of subjects is obvious.

201.    The LPD maintains a facially constitutional policy that limits to use of police canines to cases in which a physical threat or violence is imminent.

202.    However, as evidenced by the facts alleged previously and by the conduct in the instant case, the LPD officers are not adequately trained to comply with their own facially constitutional use of force policy.

203.    The lack of training of LPD officers in the constitutional limits of the use of force was a moving force behind the injuries WESLEY suffered when he was viciously bitten by a police dog on December 20, 2021.

204.    As a result of the unconstitutional use of police dog Knox on December 20, 2021 due to the deliberately indifferent failure to train LPD officers in the constitutional limits of the use of police dogs in the pursuit and apprehension of subjects who do not pose an imminent threat of harm, WESLEY suffered injuries and incurred damages as previously described.

205.    WESLEY is entitled to recover compensatory damages, costs, reasonable attorney's fees and such other relief as this Court deems appropriate from the CITY OF LYNCHBURG due to the injuries he suffered on December 20, 2021 as result of the deliberately indifferent failure of the LPD to train its police officers in the constitutional limits of use of force.

## COUNT EIGHT

**MUNICIPAL LIABILITY OF CITY OF LYNCHBURG – FAILURE TO DISCIPLINE – MARCH 11, 2021 USE OF EXCESSIVE FORCE**

**(42 U.S.C. § 1983 - 4th and 14th Amendments – *Monell* Claim)**

206.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

207.    Upon information and belief, and as alleged previously, LPD routinely fails to discipline its officers when they use objectively unreasonable and excessive force.

208.    Upon information and belief, none of the defendant police officers in the instant case were disciplined for the use of excessive force by deployment of the police dog against WESLEY on March 11, 2021.

209.    The CITY OF LYNCHBURG has repeatedly and consistently shown that it is deliberately indifferent to the need to discipline police officers who use unreasonable and excessive force.

210.    The CITY OF LYNCHBURG's deliberately indifferent failure to discipline its officers who used excessive force was a moving force behind the injuries WESLEY suffered after being viciously bitten by a police dog on March 11, 2021.

211.    As a result of the unconstitutional use of police dog Knox on March 11, 2021 due to the deliberately indifferent failure to discipline LPD officers who use unreasonable and excessive force, WESLEY suffered the injuries and incurred the damages as previously described.

212.    WESLEY is entitled to recover compensatory damages, costs, reasonable attorney's fees and such other relief as this Court deems appropriate from the CITY OF LYNCHBURG due to

the injuries he suffered on March 11, 2021 as a result of the deliberately indifferent failure of the LPD to discipline its police officers who use unreasonable excessive force.

## COUNT NINE

**MUNICIPAL LIABILITY OF CITY OF LYNCHBURG – FAILURE TO DISCIPLINE – DECEMBER 20, 2021 USE OF EXCESSIVE FORCE**

**(42 U.S.C. § 1983 - 4th and 14th Amendments – *Monell* Claim)**

213.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

214.     Upon information and belief, and as alleged previously, LPD routinely fails to discipline its officers when they use objectively unreasonable and excessive force.

215.     Upon information and belief, none of the defendant police officers in the instant case were disciplined for the use of excessive force by deployment of the police dog against WESLEY on March 11, 2021.

216.     The CITY OF LYNCHBURG has repeatedly and consistently shown that it is deliberately indifferent to the need to discipline police officers who use unreasonable and excessive force.

217.     The CITY OF LYNCHBURG's deliberately indifferent failure to discipline its officers who used excessive force was a moving force behind the injuries WESLEY suffered after being viciously bitten by a police dog on December 20, 2021.

218.     As a result of the unconstitutional use of police dog Knox on December 20, 2021 due to the deliberately indifferent failure to discipline LPD officers who use unreasonable and excessive force, WESLEY suffered injuries and incurred damages as previously described.

WESLEY is entitled to recover compensatory damages, costs, reasonable attorney's fees and such other relief as this Court deems appropriate from the CITY OF LYNCHBURG due to the injuries he suffered on December 20, 2021 as a result of the deliberately indifferent failure of the LPD to discipline its police officers who use unreasonable excessive force.

### COUNT TEN

**MUNICIPAL LIABILITY OF CITY OF LYNCHBURG – RATIFICATION – MARCH 11, 2021 USE OF EXCESSIVE FORCE**

**(42 .S.C. § 1983 - 4th and 14th Amendments – *Monell* Claim)**

218.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

219.    The Chief of the Lynchburg Police Department is the ultimate and final policymaker for the Lynchburg Police Department.

220.    The Chief of the Lynchburg Police Department is charged with final review of allegations of misconduct by LPD officers

221.    Upon information and belief, the Chief of the Lynchburg Police Department conducted a review of the use of force against WESLEY on March 11, 2021 and concluded that all of its officers acted within LPD policies, despite the fact that WESLEY posed no threat to anyone at any time during each use of force incident, meaning that uses of force were made in direct contravention of the written LPD use of force policy.

222.    The Chief of the Lynchburg Police Department, by issuing a final decision as the final policymaker charged with investigating and assessing the use of force against WESLEY on

March 11, 2021 that concluded that the officers involved in each use of force acted lawfully, ratified each of the unconstitutional and excessive uses of force.

223.    The ratification by the Chief of the Lynchburg Police Department of each of the uses of force against WESLEY by the defendant LPD officers on March 11, 2021 was a moving force behind the injuries WESLEY suffered as a result of each use of force.

224.    WESLEY is entitled to recover compensatory damages, costs, reasonable attorney's fees and such other relief as this Court deems appropriate from the CITY OF LYNCHBURG due to the ratification by the Chief of the Lynchburg Police Department of the use of excessive force against WESLEY by the defendant LPD officers on March 11, 2021.

## COUNT ELEVEN

### MUNICIPAL LIABILITY OF CITY OF LYNCHBURG – RATIFICATION – DECEMBER 20, 2021 USE OF EXCESSIVE FORCE

### (42 U.S.C. § 1983 - 4th and 14th Amendments – *Monell* Claim)

225.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

226.    The Chief of the Lynchburg Police Department is the ultimate and final policymaker for the Lynchburg Police Department.

227.    The Chief of the Lynchburg Police Department is charged with final review of allegations of misconduct by LPD officers

228.    Upon information and belief, the Chief of the Lynchburg Police Department conducted a review of the use of force against WESLEY on December 20, 2021 and concluded that all of its officers acted within LPD policies, despite the fact that WESLEY posed no threat to anyone at

any time during each use of force incident, meaning that uses of force were made in direct contravention of the written LPD use of force policy.

229.    The Chief of the Lynchburg Police Department, by issuing a final decision as the final policymaker charged with investigating and assessing the use of force against WESLEY on March 11, 2021 that concluded that the officers involved in each use of force acted lawfully, ratified each of the unconstitutional and excessive uses of force.

230.    The ratification by the Chief of the Lynchburg Police Department of each of the uses of force against WESLEY by the defendant LPD officers on December 20, 2021 was a moving force behind the injuries WESLEY suffered as a result of each use of force.

WESLEY is entitled to recover compensatory damages, costs, reasonable attorney's fees and such other relief as this Court deems appropriate from the CITY OF LYNCHBURG due to the ratification by the Chief of the Lynchburg Police Department of the use of excessive force against WESLEY by the defendant LPD officers on December 20, 2021.

<u>**COUNT TWELVE**</u>

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY OFFICER SETH REED ON MARCH 11, 2021**

**(Virginia Common Law Claim against REED)**

231.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

232.    REED acted with actual malice when he intentionally and cruelly set police dog upon WESLEY on March 11, 2021 to repeatedly bite and injure WESLEY.

233.     REED's conduct was intolerable, outrageous and shocks the conscience of any reasonable person.

234.     REED engaged in this vicious conduct with the deliberate intent of causing extreme emotional distress in the form of excruciating pain, torment and fear.

235.     No person could be expected to endure the emotional distress that REED caused to be inflicted up WESLEY.

236.     REED'S conduct also caused WESLEY's concomitant physical injuries that were previously described.

237.     WESLEY is entitled to recover compensatory damages, costs, punitive damages, reasonable attorney's fees and such other relief as this Court deems appropriate from REED due to his intentional infliction of emotional distress upon WESLEY on March 11, 2021.

## COUNT THIRTEEN

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY OFFICER SETH REED ON DECEMBER 20, 2021

### (Virginia Common Law Claim against REED)

238.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

239.     REED acted with actual malice when he intentionally and cruelly set police dog upon WESLEY on December 20, 2021 to repeatedly bite and injure WESLEY.

240.     REED's conduct was intolerable, outrageous and shocks the conscience of any reasonable person.

241.    REED engaged in this vicious conduct with the deliberate intent of causing extreme emotional distress in the form of excruciating pain, torment and fear.

242.    No person could be expected to endure the emotional distress that REED caused to be inflicted up WESLEY.

243.    REED'S conduct also caused WESLEY's concomitant physical injuries that were previously described.

244.    WESLEY is entitled to recover compensatory damages, costs, punitive damages, reasonable attorney's fees and such other relief as this Court deems appropriate from REED due to his intentional infliction of emotional distress upon WESLEY on December 20, 2021.

## COUNT FOURTEEN

### CIVIL ASSAULT AND BATTERY ON MARCH 11, 2021

### (Virginia Common Law Claim against REED)

245.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

246.    REED without cause or justification, unlawfully battered WESLEY when he purposely set the police dog Knox to maul the WESLEY's upper right thigh and buttocks on multiple occasions during the same arrest on March 11, 2021.

247.    REED ordered and allowed the police dog to attack the WESLEY's leg and buttocks several times while he was unarmed, cornered in the hinge joint of the open truck door with no path of egress, and unable to resist arrest.  WESLEY posed no threat to anyone and was generally cooperative with the officers' demands, and was only being arrested for an outstanding misdemeanor warrant.

248.     REED continued to order the police dog to bite WESLEY when WESLEY had been taken unarmed face-down to the sidewalk pinned against a fence and surrounded by armed police officers.

249.     REED's actions in conducting WESLEY's apprehension and arrest on an outstanding misdemeanor warrant while utilizing excessive force were unjustified, inexcusable, and unlawful, thereby constituted battery of WESLEY.

250.     REED intentionally placed WESLEY in reasonable apprehension of fear of harm and battery in between each application of force by the police dog.

251.     Any reasonable officer in a similar situation would recognize that it was unlawful and excessive to order a police dog to viciously attack an unarmed suspect who posed no threat, had no path of egress to flee, was only being arrested for a misdemeanor crime and was merely resisting being handcuffed without assaulting or touching anyone.

252.     WESLEY did not consent to being assaulted or battered and did not consent to the severe canine attack that lead to his injuries.

253.     REED acted with actual malice when he assaulted and battered WESLEY on March 11, 2021.

254.     REED acted in wanton and willful disregard of the WESELY's rights when he assaulted and battered WESLEY on March 11, 2021.

255.     As a direct and proximate result of REED's unlawful assault and battery, WESLEY suffered significant physical injuries, mental anguish, and emotional harm.

256.     WESLEY is entitled to recover (a) reasonable and appropriate compensatory damages (b) punitive damages, (c) costs, expenses and reasonable attorney's fees, and (d) such other and

further relief as this Court deems necessary and proper from REED for the injuries he sustained as result of assault and battery on March 11, 2021.

## COUNT FIFTEEN

### CIVIL ASSAULT AND BATTERY ON DECEMBER 20, 2021

### (Virginia Common Law Claim against REED)

257.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

258.    REED, acting without cause or justification, unlawfully battered WESLEY when he purposely set the police dog Knox, to maul WESLEY on December 20, 2021.

259.    WESLEY posed no threat to anyone on December 20, 2021.

260.    REED's actions in conducting WESLEY's apprehension and arrest on an outstanding misdemeanor warrant utilizing excessive force were unjustified, inexcusable, and unlawful, thereby constituting battery of WESLEY.

261.    REED placed WESLEY in reasonable fear of harm and battery by unlawfully threatening to use the police dog to bite WESLEY.

262.    Any reasonable officer in a similar situation would recognize that it was unlawful and excessive to order a police dog to viciously attack an unarmed suspect who posed no threat and was only being arrested suspicion of committing only a misdemeanor.

263.    WESLEY did not consent to being assaulted or battered on December 20, 2021 and he did not consent to the severe canine attack that lead to his injuries.

264.    REED acted with actual malice when he assaulted and battered WESLEY on December 20, 2021 by setting a police dog upon WESLEY to cause him injury.

265.    REED acted in wanton and willful disregard of the Plaintiff's rights when they assaulted and battered WESLEY on December 20, 2021.

266.    As a direct and proximate result of REED's unlawful assault and battery, WESLEY suffered significant and severe physical injuries, severe mental anguish, and severe emotional harm.

267.    WESLEY is entitled to recover (a) reasonable and appropriate compensatory damages, (b) punitive damages, (c) costs, expenses and reasonable attorney's fees, and (d) such other and further relief as this Court deems necessary and proper from REED for the injuries he sustained as result of the assault and battery on December 20, 2021.

<u>COUNT SIXTEEN</u>

**GROSS, WILLFUL, WANTON AND RECKLESS NEGLIGENCE ON MARCH 11, 2021**

**(Virginia Common Law Claim against REED)**

268.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

269.    REED had a legal duty to use care to protect the Plaintiff's Constitutional rights.

270.    REED breached his duty to WESLEY on March 11, 2021 when he:

- Used more force than necessary to apprehend and arrest WESLEY by deployment of a police dog.

- Ordered the police dog to attack WESLEY repeatedly during the arrest, even after WESLEY had been taken to the ground unarmed.

271.    REED acted with utter disregard to WESLEY's rights or welfare when he acted in the manner described above, denying even scant care to WESLEY.

272.    The above-described actions of the REED were willful, wanton, and reckless.

273.    The injuries sustained by WESLEY as described above were directly and proximately caused by the negligence of REED.

274.    WESLEY is entitled to recover (a) reasonable and appropriate compensatory damages, (b) punitive damages, (c) costs, expenses and reasonable attorney's fees, and (d) such other and further relief as this Court deems necessary and proper from each of the defendants REED.

## COUNT SEVENTEEN

### GROSS, WILLFUL, WANTON AND RECKLESS NEGLIGENCE ON DECEMBER 20, 2021

### (Virginia Common Law Claim against REED)

275.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

276.    REED had a legal duty to use care to protect the Plaintiff's Constitutional rights.

277.    REED breached his duty to WESLEY on December 20, 2021 when he:

- Used more force than necessary to apprehend and arrest WESLEY by deployment of a police dog.

- Allowed a police dog to attack the Plaintiff on multiple occasions during his apprehension on December 20, 2021.

- Allowed the police dog to continue to bite WESLEY for more than thirty seconds for no other purpose than to torture WESLEY by means of the dog.

278.    REED acted with utter disregard to WESLEY's rights or welfare when he acted in the manner described above, denying even scant care to WESLEY.

279.     The above-described actions of the REED, were willful, wanton, and reckless.

280.     The injuries sustained by WESLEY as described above were directly and proximately caused by the negligence of REED.

281.     WESLEY is entitled to recover (a) reasonable and appropriate compensatory damages, (b) punitive damages, (c) costs, expenses and reasonable attorney's fees, and (d) such other and further relief as this Court deems necessary and proper from each of the defendants REED.

**AND NOTHING FURTHER REMAINING**, Plaintiff, CALVIN WESLEY, requests that this Court grant him the following relief:

(a)     Judgment against each of the Defendants, jointly and severally, in the amount of TEN MILLION DOLLARS ($10,000,000.00) and such additional damages as may be proven at trial;

(b)     Punitive damages from Defendant Seth Reed in such amount as proven at trial;

(c)     Costs and expenses, including reasonable attorney's fees;

(d)     Injunctive relief to prevent further unlawful conduct;

(e)     All such other legal and equitable relief as the Court deems appropriate.

**A JURY TRIAL IS DEMANDED**

Respectfully Submitted,

**CALVIN WESLEY**
**By Counsel**

**JAMES RIVER LEGAL ASSOCIATES**
**7601 Timberlake Road**
**Lynchburg, Virginia 24502**
**P (434) 845-4529**
**F (434) 845-8536**

**By:** **/s/ M. Paul Valois**
    **M. Paul Valois, Esquire**
    **Counsel for Plaintiff**
    **Virginia State Bar No. 72326**
    **mvalois@vbclegal.com**

**McFADGEN LAW, PLC**
**3831 Old Forest Road, Suite 6**
**Lynchburg, Virginia 24501**
**Telephone: (434) 385-4579**
**Facsimile:  (434) 900-2008**

**By:** **/s/ Steven D. McFadgen, Sr.**
    **Steven D. McFadgen, Sr., Esq.**
    **Counsel for Plaintiff**
    **Virginia State Bar No. 83273**
    **muchmorelaw@gmail.com**