CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
6/13/2025
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
     DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| CALVIN WESLEY.<br><br>        *Plaintiff,*<br><br>v.<br><br>THE CITY OF LYNCHBURG, et al.<br><br>        *Defendants.* | CASE NO. 6:24-cv-00032<br><br>**MEMORANDUM OPINION**<br><br>JUDGE NORMAN K. MOON |

   The Defendants – the City of Lynchburg ("the City") and Lynchburg Police Department Officer Seth Reed ("Officer Reed") – move to dismiss several counts of Plaintiff Calvin Wesley's excessive force complaint. As discussed below, Officer Reed's motion to dismiss the Plaintiff's intentional infliction of emotional distress claims, Dkt. 12, is GRANTED, and the City's motion to dismiss the Plaintiff's Section 1983 claims, Dkt. 7, is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

   This case arises from two arrests involving the use of a police dog in March and December of 2021. The facts alleged in the Complaint are accepted as true and all reasonable inferences are drawn in favor of the Plaintiff for the purposes of considering a motion to dismiss. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

**A. Prior Arrests**

***1. March 11, 2021***

1

On March 11, 2021, the Plaintiff was staying at an address on Grace Street in Lynchburg. Dkt. 1 ("Comp.") at ¶ 17. That afternoon, Lynchburg Police Department ("LPD") officers arrived at the address to execute a misdemeanor arrest warrant[1] against the Plaintiff. *Id*. at ¶ 16. The exact time that officers first arrived on the scene is unclear from the Complaint.

Sometime around 1:13 p.m., Officer Reed arrived on the scene and found the Plaintiff in his landlady's pickup truck. *Id*. at ¶¶ 20, 22. The Plaintiff's landlady was in the driver's seat and the Plaintiff was in the passenger seat. *Id*. at ¶ 23. Officer Reed "ran" to the truck along with his police dog, Knox. *Id*. at ¶ 21. Officer Reed told the Plaintiff that there was an outstanding warrant for his arrest and instructed him to exit the vehicle. *Id*. at ¶ 24. The Plaintiff "stated that he did not mind getting out of the truck, but that he wanted to know why he was being arrested." *Id*. at ¶ 25. The Plaintiff soon exited the truck. *Id*. at ¶ 26.

LPD Officers Chase Bryant and Thomas Hall arrived around the same time. These two officers "placed hands" on the Plaintiff and told him about the outstanding warrant. *Id*. at ¶ 27. Even though the Plaintiff asked why he was under arrest, the officers on the scene did not inform him of the nature of the warrant. *Id*. at ¶ 29. The officers gave the Plaintiff "conflicting instructions" about where to place his hands (behind his back or on the truck) and "cornered [him] into the hinge joint of the open truck door, with no path or egress or escape." *Id*. at ¶¶ 30-31. An image from Officer Reed's body camera footage (labeled "Image 1" in the complaint) shows how other officers positioned the Plaintiff.[2]

At around 1:14 p.m. Officers Bryant and Hall held the Plaintiff's arms while Officer Reed (with Knox) was behind them. *Id*. at ¶ 32. Officer Bryant and the others "attempted to handcuff" the Plaintiff who "struggled against being handcuffed" and "complained that the officers were

---

[1] The Complaint does not state what alleged misdemeanor offense provided the grounds for the warrant.
[2] At this stage of the proceedings, the Court has not received or reviewed the body camera footage.

hurting him." *Id*. at ¶ 35. While officers tried to handcuff the Plaintiff, Officer Reed threatened to have Knox bite the Plaintiff unless the Plaintiff stopped what Officer Reed referred to as "fighting." *Id*. at ¶ 36.[3] Two other officers arrived at the pickup truck around this time. *Id*. at ¶¶ 39-40. In total, five uniformed officers surrounded the Plaintiff during the arrest. *Id*. at ¶ 41.

The Plaintiff complained about shoulder pain and one of the officers adjusted his grip on the Plaintiff's arm. *Id*. at ¶¶ 44-45. Nevertheless, the Plaintiff "continued to struggle against being handcuffed and he continued to question the officers about the reason for his arrest." *Id*. at ¶ 46. The officers "refused to answer him." *Id*.

Officer Reed instructed the other officers to get away from the truck so that Knox could bite the Plaintiff. *Id*. at ¶ 48. This was despite the officers having already cuffed the Plaintiff's left wrist and controlling his right arm in anticipation of cuffing it. *Id*. at ¶ 53. Officer Reed then "pushed the other officers to the side" and instructed Knox to bite the Plaintiff. *Id*. at ¶¶ 58-59. The other officers "forced" the Plaintiff "facedown to the sidewalk next to the pickup truck," where he was pinned against a chain fence with his arms behind his back. *Id*. at ¶¶ 60-61. Officer Reed "continued to command the police dog … to bite [the Plaintiff] while [the Plaintiff] was laying unarmed and face-down on the sidewalk, with his hands behind his back, surrounded by five armed police officers and constrained by a chain link fence." *Id*. at ¶ 62. The biting lasted from 13:14:51 to 13:15:06 on the body camera footage (about 15 seconds). *Id*. at ¶¶ 59, 65. This was three seconds beyond Officer Reed's initial command for Knox to release the Plaintiff, which the dog disobeyed until Officer Reed issued additional commands and corrections. *Id*. at ¶¶ 64-65.

---

[3] The Plaintiff disputes the characterization of his conduct as "fighting" because even though "he was resisting being handcuffed without explanation by the officers," he "was not fighting anyone at that time and did not do so at any time on March 11, 2021." Comp. at ¶ 37.

3

At the time that Knox bit the Plaintiff, the Plaintiff contends "no crime was ongoing and no severe crime had been committed" and "no physical threat or violence existed as [the Plaintiff] was unarmed and surrounded by armed police officers who had him physically restrained until he was handcuffed." *Id*. at ¶¶ 77-78.

The Plaintiff required medical attention at the hospital for injuries resulting from the dog bites. *Id*. at ¶¶ 66-67. He contends the dog bites caused him to suffer severe pain, severe emotional distress, permanent scarring, humiliation, and fear. *Id*. at ¶ 85.

The complaint alleges that Officer Reed made false accounts of the incident to authorities. *Id*. at ¶ 68. Officer Reed allegedly told dispatch that the Plaintiff had assaulted officers, even though he later told an officer who arrived after the Plaintiff was handcuffed that he did not know if any other officers were assaulted. *Id*. at ¶¶ 69-70. Officer Reed also charged the Plaintiff with felony assault and battery on a law enforcement officer, but the charge was dismissed when state prosecutors brought a motion to *nolle prosequi* the charge on December 14, 2022. *Id*. at ¶¶ 83-84. The Plaintiff contends that Officer Reed deployed the dog against him "in retaliation for a past incident" involving the Plaintiff, but the complaint does not elaborate on the prior event. *Id*. at ¶ 81.

The Plaintiff also casts an LPD "use of force investigation" into the arrest as a "farce" because it exonerated Officer Reed despite him ordering the dog to bite the Plaintiff in violation of the LPD's use of force policy. *Id*. at ¶¶ 73-76. The policy "stated that use of a canine can be an application of deadly force" and "that the use of a canine was prohibited when no physical threat or violence appeared imminent" – yet no such threat existed when Officer Reed commanded Knox to bite the Plaintiff. *Id*. at ¶¶ 74-78.

4

*2. December 20, 2021*

Around 9:20 p.m. on December 20, 2021, Officer Reed responded to a reported domestic disturbance involving the Plaintiff at the Plaintiff's wife's apartment in Lynchburg. *Id*. at ¶¶ 89, 92. The Plaintiff was not present when police arrived "but he saw the police arriving and left the area to avoid them." *Id*. at ¶ 93. He moved through some nearby woods and made his way toward a convenience store on Old Forest Road. *Id*. at ¶ 97. At the time of the domestic disturbance, a protective order was in place that barred contact between the Plaintiff and his wife, and there was also an outstanding misdemeanor arrest warrant out against the Plaintiff.[4] *Id*. at ¶¶ 94-95.

Officer Reed and other LPD officers searched for the Plaintiff. *Id*. at ¶ 96. Officer Reed, who was accompanied by the police dog, Knox, pursued the Plaintiff through the woods. *Id*. at ¶ 99. The Plaintiff contends that Officer Reed brought Knox to the scene "specifically in anticipation of deploying Knox against [the Plaintiff]." *Id*. at ¶ 98. Officer Reed came within 40 yards of the Plaintiff and although Officer Reed could not positively identify the Plaintiff in the dark, Officer Reed called on the Plaintiff to stop and said he would release the dog unless the Plaintiff did so. *Id*. at ¶¶ 100-03. The Plaintiff left the woods and flagged down a car on a nearby street. 104. When the Plaintiff tried to enter the car, Officer Reed released Knox and commanded the dog to bite the Plaintiff. *Id*. at ¶ 106. Officer Reed's body camera footage showed that Knox started biting the Plaintiff's arm before the Plaintiff could get into the car – which then drove away and left the Plaintiff being bitten on the street. *Id*. at ¶¶ 107-08. Knox bit the Plaintiff's

---

[4] The Plaintiff makes contradictory assertions about whether there was an outstanding warrant against him on December 20, 2021. In paragraph 94 of the Complaint, the Plaintiff states that there was an outstanding misdemeanor arrest warrant. But, in paragraph 109, he states that there were no outstanding warrants against him. At oral argument, Plaintiff's counsel clarified that officers had a misdemeanor warrant for the Plaintiff's arrest on December 20, 2021 for a misdemeanor domestic violence charge.

5

right arm and the Plaintiff attempted to bat the dog away with his free hand "for several minutes while several other police officers conversed at a distance." *Id*. at ¶¶ 115, 119. Officer Reed eventually ordered Knox to let go of the Plaintiff. *Id*. at ¶120. Officer Reed arrested the Plaintiff for misdemeanor fleeing from law enforcement and feloniously attempted to maim or kill a law enforcement animal. *Id*. Authorities later amended the latter charge to a misdemeanor and the Plaintiff pled guilty to two misdemeanors. *Id*. at 17 n.2.

The Plaintiff contends that at the time Officer Reed released Knox to bite him, there was no report that the Plaintiff had been violent, hurt anyone, was armed, or posed a physical threat to anyone. *Id*. at ¶¶ 110-13. The Plaintiff states that he "had the right to run from [Officer Reed] because he knew [Officer Reed] would use excessive force against him by deploying the police dog to bite him." *Id*. at ¶ 114. The Plaintiff also alleges that Officer Reed released the police dog "out of revenge and in retaliation … for past incidents he had experienced involving [the Plaintiff]." *Id*. at ¶ 117.

The Plaintiff suffered puncture wounds and lacerations to his right arm and wrist. *Id*. at ¶ 115. These injuries required medical care, including debridement of his right forearm and 27 stiches. *Id*. at ¶ 125. The Plaintiff alleges that the dog bites caused him severe pain, severe emotional distress, permanent nerve damage, permanent scarring, humiliation, and fear. *Id*. at ¶ 126.

**B. Lynchburg Police Department Policies, Customs, and Practices**

The Plaintiff asserts that LPD "has failed to properly train its officers in the use of force" because there have been 15 instances of alleged excessive force by police between 2001 and 2020. *Id*. at ¶¶ 131, 133. Three of the incidents involved alleged misuse of police dogs. *Id*. at ¶

6

131(c), (e), (h). The Plaintiff asserts that "an obvious lack of training has caused LPD officers to believe that a police dog can be used to secure an unarmed fleeing suspect, including a suspect wanted only on a misdemeanor warrant, and who poses no imminent threat[.]" *Id*. at ¶ 134. Moreover, the Plaintiff states that LPD policy prohibited the use of a canine when no physical threat or violence appeared imminent, *id*. at ¶ 75, and the two uses of a police dog on the Plaintiff in 2021 violated the policy. *Id*. at ¶ 134.

The Plaintiff alleges alleges that uses of force against him in March and December of 2021 "were reported and investigated by LPD, but none of the officers were disciplined or counseled." *Id*. at ¶ 135.

### C. Plaintiff's Claims

In his 17-count Complaint, the Plaintiff alleges that the City and Officer Reed are liable under 42 U.S.C. § 1983 for violating his civil rights (Counts 1-11). He also brings several common law claims against Officer Reed for intentional infliction of emotional distress ("IIED") (Counts 12-13), assault and battery (Counts 14-15), and gross, willful, wanton, and reckless negligence (Counts 16-17). Relevant to this stage of the proceedings is that Officer Reed moves to dismiss the IIED claims, Dkt. 13, and the City moves to dismiss the Section 1983 claims in Counts 4 through 11. Dkt. 7.

## II. LEGAL STANDARDS

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. It does not, however, "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

*Rubenstein*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), accepting all well pleaded factual allegations in the complaint as true and taking all reasonable inference in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). A court need not accept as true "legal conclusions, elements of a cause of action, … bare assertions devoid of further factual enhancement, … unwarranted inferences, unreasonable conclusions, or arguments." *Richardson v. Shapiro*, 751 F. App'x 346, 348 (4th Cir. 2018) (unpublished) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (internal quotation marks omitted)).

### III. DISCUSSION

**A. Municipal Liability Claims**

The Plaintiff contends that the City should be held liable under Section 1983 for allegedly violating his Fourth and Fourteenth Amendment rights during the 2021 arrests. The Complaint alleges four sets of claims: (1) the City maintained an unconstitutional custom of using excessive force against its residents through the unreasonable use of police dogs (Counts 4-5); (2) the City failed to train its officers in the constitutional limits of the use of police dogs (Counts 6-7); (3) the City failed to discipline officers who used unreasonable and excessive force (Counts 8-9); and (4) the City – through its police chief – ratified unconstitutional and excessive uses of force (Counts 10-11).

The Plaintiff asserts these claims pursuant to 42 U.S.C. § 1983, which authorizes civil suits by individuals who have had their federal statutory or constitutional rights deprived by

government officials acting under color of state law. These claims against local governments – also known as "*Monell* claims" - arise under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury[.]" *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest [s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

Additionally, the municipality's policy or custom must be the "moving force" behind the violation, meaning that a plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Washington v. Housing Authority of the City of Columbia*, 58 F.4th 170, 182 (4th Cir. 2023) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). Vicarious liability or *respondeat superior* cannot provide the theory of liability; instead, a *Monell* claim must be based on the *municipality's* actions (i.e., its policies or customs) rather than just those of its employees. *Id*.

The Fourth Circuit has noted the following principles for resolving a motion to dismiss a *Monell* claim:

> to survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege facts which, if true, "'state a claim to relief that is *plausible* on its face.'" The recitation of facts need not be particularly detailed, and the chance of success need not be particularly high. A plaintiff fails to state a claim only when he

9

> offers "labels and conclusions" or formulaically recites the elements of his § 1983 cause of action.

*Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 403 (4th Cir. 2014) (citations omitted). Thus, while "prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Id*.

***1. Unconstitutional Custom or Practice Regarding Excessive Force (Counts 4 and 5)***

The Plaintiff alleges that while LPD "maintains a facially constitutional policy that limits … use of police canines to cases in which a physical threat or violence is imminent," the City's police officers "routinely engage in unconstitutional customs and practices regarding excessive use of force in general, and excessive and unreasonable use of force by police dogs in particular." Comp. at ¶¶ 171-72, 181-82. Counts 4 and 5 allege that incidents of excessive force that the Plaintiff suffered on March 15, 2021 and December, 2021 were part of an "unconstitutional custom or practice" in violation of his Fourth and Fourteenth Amendment rights.

Section 1983 renders localities liable for customs which violate a plaintiff's constitutional rights. *Monell,* 436 U.S. at 694. A custom "may be found in 'persistent and widespread ... practices of [municipal] officials [which] [a]lthough not authorized by written law, [are] so permanent and well-settled as to [have] the force of law.'" *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987) (quoting *Monell*, 436 U.S. at 691).

Under what the Fourth Circuit refers to as a "custom by condonation," a locality is liable under Section 1983 "if municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" *Owens,* 767 F.3d at 402 (quoting *Spell*, 824 F.2d at 1389). "A plaintiff must point to a 'persistent and widespread practice[ ] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive

10

knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Id*. (quoting *Spell*, 824 F.2d at 1386–91)). However, "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984).

Here, the Plaintiff meets the requirements for pleading his custom by condonation claims. He points to 15 examples of alleged excessive force by Lynchburg police between 2001 and 2020, including three related to alleged misuse of a police canine. The three instances – provided based "upon information and belief" – are (1) on January 23, 2016, a man named George Brown was injured after officers instructed a police dog to attack him, despite Mr. Brown not resisting arrest or presenting a threat; (2) on November 28, 2016, a man named Donald Lipford was injured when police officers struck him and ordered a police dog to attack him, despite Mr. Lipford not resisting arrest or presenting a threat; and (3) on July 18, 2018, officers used a police dog against a man named Larry Booker without justification. Comp. at ¶ 131(c), (e), and (h). The Plaintiff asserts that the City improperly used a police dog against him on March 11, 2021 and December 11, 2021, despite the Plaintiff not posing an imminent threat of harm.

The alleged examples of excessive force are similar to the Plaintiff's own alleged encounters with an LPD police dog and could lead to the reasonable inference that City officials tacitly approved the manner in which officers deploy police dogs because they failed to take any action. The Plaintiff contends that the pattern of prior conduct shows that LPD officers "routinely" engage in excessive and unreasonable use of force by police dogs. *Id*. at ¶¶ 172, 182. Further, he alleges that the City was on notice of this custom through lawsuits, complaints, press coverage, and investigations, but took no steps to address the excessive force. *Id*. at ¶¶ 174, 184.

11

This inaction showed "deliberate indifference to the constitutional rights of [the City's] residents and citizens to be free from unreasonable use of force by LPD officers and police dogs[.]" *Id*. at ¶¶ 175, 185. The Plaintiff contends that this reflected an "unconstitutional custom of deploying police dogs to … apprehend subjects who pose no imminent threat of harm," which, in turn, "was a moving force" behind his own injuries in 2021. *Id*. at ¶¶ 177, 187.

While three prior incidents are few in number, courts within this circuit have allowed claims alleging an unconstitutional custom or practice by police to proceed when plaintiffs have alleged a similar number of incidents demonstrating a custom or practice. *See Wesley v. City of Lynchburg*, No. 6:23-cv-00012, 2023 WL 3550290 (W.D. Va. May 18, 2023) (prior version of this case where the Court found that the Plaintiff's three examples could support a municipal custom claim and overcome a motion to dismiss); *Washington v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 535-36 (D. Md. 2020) (denying motion to dismiss a *Monell* claim alleging a widespread practice of *Brady* violations to proceed where the plaintiff alleged the police department fabricated evidence and suppressed exculpatory evidence in four cases resulting in wrongful convictions from 1981 to 1988, as well as his own 1987 wrongful conviction); *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 543 (E.D. Va. 2015) (concluding that an allegation regarding a single shooting five years before that which allegedly occurred in plaintiff's cases sufficiently supported a claim of unconstitutional custom of failure to adequately investigate excessive force claims); *see also Jordan by Jordan v. Jackson*, 15 F.3d 333, 339 (4th Cir. 1994) (explaining that a plaintiff need not "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation.").

The City argues that the Plaintiff's alleged examples of prior excessive force by LPD canines based "upon information and belief" are not "meaty enough" to state a plausible unconstitutional custom claim because the complaint contains no allegations that there was a finding by a tribunal that any of the past uses of force actually violated constitutional rights. Dkt. 8 at 5. At this stage of the proceedings, no such pleading requirement applies. As the Fourth Circuit has explained, the facts in a viable *Monell* claim "need not be particularly detailed, and the chance of success need not be particularly high" because a plaintiff just needs to state a *plausible* claim. *Owens*, 767 F.3d at 403. Here, the Plaintiff's allegations, if true, would state a plausible claim that the City maintained an "unconstitutional custom of deploying police dogs to pursue and apprehend subjects who pose no imminent threat of harm." Comp. at ¶¶ 176, 187. Accordingly, the Plaintiff's *Monell* claims against the City alleging an unconstitutional custom or practice (Counts 4 and 5) survive the City's motion to dismiss.

*2. Failure to Train Police Officers (Counts 6 and 7)*

In Counts 6 and 7, the Plaintiff alleges that the City has a facially constitutional policy limiting the use of police dogs to situations in which an individual poses a physical threat or when violence is imminent, but that it has failed to adequately train its officers to comply with the policy. *Id*. at ¶¶ 192-94, 200-02.

The Supreme Court has acknowledged that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). For liability to arise, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of

persons with whom the [untrained employees] come into contact.'" *Id*. (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To be deliberately indifferent, municipal policymakers must have "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights[.]" *Id*. Training deficiencies do not only include "express authorizations" of unconstitutional conduct – they can also include "tacit authorizations" and "failures adequately to prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty." *Spell*, 824 F.2d at 1390. A failure to provide proper training can render a city liable "if it actually causes injury." *Harris*, 489 U.S. at 390; *see also Estate of Jones by Jones v. City of Martinsburg*, 961 F.3d 661, 671-72 (4th Cir. 2020) (discussing causation requirement); *Spell*, 824 F.2d at 1390 (same).

Here, the Plaintiff alleges that a specific training deficiency – "a failure to train officers on the constitutional limits of handling and deploying police canines" – caused his own injuries by an LPD police dog. Comp. at ¶¶ 192-95, 200-203. He essentially argues that the City engaged in a tacit authorization based on the prior alleged instances of unreasonable use of police canines and a failure to adjust its training. He contends that while the City has "a facially constitutional policy that limits [the] use of police canines to cases in which a physical threat or violence is imminent," the facts of alleged prior instances of excessive force and the facts in the instant case show that "LPD officers are not adequately trained to comply with their own facially constitutional use of force policy." *Id*. at ¶¶ 193-94, 201-02. Moreover, after providing examples of alleged misconduct, he writes that "[i]t is obvious that LPD has failed to properly train its officers in the use of force because of the multitude of instances in which officers have used force in violation of policy" and that this has led officers "to believe that a police dog can be used to secure an unwarned fleeing suspect, including a suspect wanted only on a misdemeanor

14

warrant, and who poses no imminent threat." *Id*. at ¶¶ 133-34. Lawsuits, complaints, press reports, and investigations put the City "directly on notice of the existence and extent" of the City's practices. *Id*. at ¶¶ 174, 184. The Plaintiff contends that the alleged lack of training was, in turn, a "moving force" behind the injuries he endured. *Id*. at ¶¶ 195, 203. The Plaintiff's allegations, if true, support the reasonable inference that that City policymakers had notice of a potential deficiency in officer training yet were deliberately indifferent to the rights of people with whom officers come into contact, which later caused the specific violations of the Plaintiff's constitutional rights. This is enough for Counts 6 and 7 to state viable *Monell* claims and survive the City's motion to dismiss.

### 3. Failure to Discipline for Unreasonable and Excessive Use of Force (Counts 8 and 9)

In Counts 8 and 9, the Plaintiff alleges that the City "routinely fails to discipline its officers when they use objectively unreasonable and excessive force." Comp. at ¶¶ 207, 214. Moreover, he alleges that none of the officers were disciplined for use of excessive force against the Plaintiff on March 11, 2021, and December 20, 2021. *Id*. at ¶¶ 208, 215. He contends that the City's "deliberately indifferent failure to discipline its officers who used excessive force was a moving force" behind his injuries. *Id*. at ¶¶ 210, 217.

"A failure to discipline claim requires a plaintiff to prove a 'persistent and widespread practice of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Baker v. Stover*, No. 3:23-cv-710, 2024 WL 4122036, at *8 (E.D. Va. Sept. 6, 2024) (quoting *Owens*, 767 F.2d at 402). There must also be a "sufficiently close causal link" between uncorrected misconduct and the specific violation at issue. *Spell*, 824 F.2d at 1391.

15

Here, the Plaintiff has simply provided little to no information to allege that the City's failure to discipline officers rises to the level of a widespread practice reflecting the deliberate indifference of local officials. He broadly alleges that the City "routinely fails" to take disciplinary measures when officers use excessive force, but provides no other details other than to recite some of the elements of this cause of action in a conclusory manner (i.e., the City was "deliberately indifferent," and that this deliberate indifference was a "moving force" behind the Plaintiff's injuries). Comp. at ¶¶ 207, 209-10, 214, 216-17   The only specific instance he cites of the City allegedly failing to discipline officers is in relation to his own case. *Id*. at ¶¶ 135, 208, 211, 215, 217. In sum, the Plaintiff's failure to discipline claims largely rely on conclusory allegations and recitations of elements of the cause of action. This is not enough to state a claim for relief. *See Richardson v. Shapiro*, 751 F. App'x 346, 348 (4th Cir. 2018) (A court need not accept as true "legal conclusions, elements of a cause of action, … bare assertions devoid of further factual enhancement, … unwarranted inferences, unreasonable conclusions, or arguments." (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (internal quotation marks omitted))). Accordingly, the City's motion to dismiss is granted as to Counts 8 and 9.

*4. Ratification by Chief of Police (Counts 10 and 11)*

The Plaintiff alleges in Counts 10 and 11 that the chief of the LPD – described as the "ultimate and final policymaker for the Lynchburg Police Department" – conducted reviews of the use of force against the Plaintiff following the incidents on March 11, 2021, and December 20, 2021. Comp. at ¶¶ 219-21, 226-28. Both times, the chief "concluded that all of [the LPD] officers acted within LPD policies, despite the fact that [the Plaintiff] posed no threat to anyone

at any time during each of the use of force incident[s], meaning that uses of force were made in direct contravention of the written LPD use of force policy." *Id*. at ¶¶ 221, 228. The Plaintiff alleges that the use of force policy at the time of these arrests "clearly stated that the use of a canine was prohibited when no physical threat or violence appeared imminent." *Id*. at ¶ 75. He also alleges that the LPD policy "clearly states that a police dog can constitute deadly force" and asserts that the policy would have prohibited the use of a police dog "to secure an unarmed fleeing suspect, including a suspect wanted only on a misdemeanor warrant, and who poses no imminent threat[.]" *Id*. at ¶ 134.

The chief's conclusion that the officers in each incident acted lawfully "ratified each of the unconstitutional and excessive uses of force," *Id*. at ¶¶ 222, 229, and this ratification, in turn, became a "moving force" behind the Plaintiff's injuries. *Id*. at ¶¶ 223, 230.

As the City notes in its briefing, Dkt. 8 at 7-9, Dkt. 20 at 3 (and as the Plaintiff concedes in his response, Dkt. 17 at 6) the Fourth Circuit has precluded this line of argument for *Monell* liability under a ratification theory. In *Franklin v. City of Charlotte*, 64 F.4th 519 (4th Cir. 2023), the Fourth Circuit held that a plaintiff could *not* pursue a Section 1983 claim against a municipality on the grounds that a city manager's after-the-fact approval of a police shooting as justified under the City's use of force policy subjected the local government to liability.

Under a ratification theory, the official act of a municipality (through a decisionmaker) must *cause* the alleged violation of the plaintiff's constitutional rights. *Franklin*, 64 F.4th at 536. In *Franklin*, the Fourth Circuit approved the district court's grant of summary judgment to a municipality on a ratification claim because a city manager's "post-facto approval of an internal shooting investigation cannot possibly have caused the constitutional violation. Reversing the City Manager's decision cannot undo what is done." *Id*. at 537.

17

Here, the Plaintiff brings the kind of ratification claims that *Franklin* forbids. The police chief's post-facto approval of an investigation into the use of force against the Plaintiff on March 11, 2021 and December 20, 2021, cannot have caused the alleged constitutional violations that the Plaintiff suffered. The chief's determination that the officers did not violate the Plaintiff's rights could not have changed whether the prior excessive force actually occurred. Indeed, the Plaintiff acknowledges the *Franklin* decision and the fact that the Court is bound to follow it, but nonetheless argues that "the Fourth Circuit's ruling is erroneous." Dkt. 17 at 6. Regardless of the Plaintiff's views of whether the Fourth Circuit correctly decided *Franklin*, this Court must dismiss the ratification claims in Counts 10 and 11 in accordance with controlling precedent.

**B. Intentional Infliction of Emotional Distress ("IIED") (Counts 12 and 13)**

IIED claims are inapplicable to the conduct alleged here, which is in the nature of assault and battery or excessive force. Rather, IIED is a form of "liability in tort for a nontactile wrong which resulted in physical injury." *Ruth v. Fletcher*, 377 S.E.2d 412, 415 (Va. 1989); *see also Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991). The Plaintiff does not plead injury and distress from a nontactile tort, but rather expressly alleges the tactile torts of assault and battery. Comp. at ¶¶ 245-67. Accordingly, the Court will grant Officer Reed's motion to dismiss Plaintiff's IIED claims in Counts 12 and 13.

## CONCLUSION

For the foregoing reasons, Officer Reed's motion to dismiss Counts 12 and 13, Dkt. 12, is **GRANTED**. The City's motion to dismiss, Dkt. 7, is **GRANTED** as to Counts 8 through 11 and **DENIED** as to Counts 4 through 7. An accompanying Order will be issued on this date.

Entered this 13th day of June, 2025.

                                             */s/ Norman K. Moon*
                                             NORMAN K. MOON
                                             SENIOR UNITED STATES DISTRICT JUDGE