IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CALVIN WESLEY ) | |
|     *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| THE CITY OF LYNCHBURG ) | Civil Action: 6:24cv00032 |
| ) | |
| and ) | |
| ) | |
| LPD OFFICER SETH REED, ) | |
| in his individual capacity, ) | |
|     *Defendants*. ) | |

## BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, the Plaintiff, Calvin Wesley, by and through the undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56 of the United States District Court for the Western District of Virginia, and hereby submits this Memorandum in Opposition to Defendant City of Lynchburg's Motion for Summary Judgment.

# INTRODUCTION

This case involves two separate incidents in which Defendant Sergeant Seth Reed ("Defendant Reed") deployed a police canine to bite Plaintiff Calvin Wesley (hereafter "Mr. Wesley") during arrests for misdemeanor offenses. Defendant has moved for summary judgment on all claims, arguing that his actions were objectively reasonable and that he is entitled to qualified immunity. However, as demonstrated below, genuine issues of material fact exist regarding whether Defendant's use of was excessive under the circumstances, precluding summary judgment.

Defendant Seth Reed asks the Court to enter summary judgment on all claims. Defendant Reed's motion rests on his version of events and contends: (1) his police dog deployments were objectively reasonable under *Graham v. Connor;* (2) any delay in releasing the police dog from its attack on Mr. Wesley was trivial; (3) he had probable cause to charge Plaintiff following the March 11, 2021 incident; and (4) Plaintiff's *Monell* and state-law claims fail. Those contentions ignore (a) genuine, material disputes of fact shown in the Complaint, deposition excerpts and body-cam footage, and (b) Plaintiff's properly supported legal arguments about the excessive and retaliatory nature of Defendant Reed's conduct and about municipal fault. A fair-minded jury could — and should — resolve those factual disputes in Plaintiff's favor. Summary judgment should therefore be denied.

## STATEMENT OF FACTS

## I     MARCH 11, 2021 INCIDENT

On March 11, 2021, Defendant Seth Reed took it upon himself to respond to a warrant call for Mr. Wesley, who was wanted on a misdemeanor domestic assault and battery warrant. (Reed Depo. at 26.) When Defendant Reed arrived, Mr. Wesley was unarmed and sitting in the passenger seat of a pickup truck. Mr. Wesley exited the vehicle when instructed to do so, but repeatedly asked why he was being arrested. The officers refused to inform him of the reason for his arrest.

Mr. Wesley resisted being handcuffed without being informed of the basis of the arrest, he was never violent and that he never posed any threat to the officers. Critically, at the time Defendant Reed commanded the police dog to bite Mr. Wesley, two officers had Mr. Wesley cornered in the hinge joint of the open truck passenger door with no path of egress, surrounded by five armed police officers, and his left wrist was already handcuffed.

Defendant Reed's characterization that he was "fighting" the officers is clearly refuted by the video evidence and his own deposition. He testified that by "fighting" he meant "active resistance" and "non-compliance" on Mr. Wesley's pare without any intent to cause injury. (Reed Depo. at 45.) The body camera footage shows that Mr. Wesley was merely questioning why he was being arrested and that he was resisted being handcuffed without explanation, not physically fighting or assaulting anyone. Defendant Reed claims that Mr. Wesley "elbowed" him, but that when this incident occurred, Mr. Wesley was facing away from Defendant Reed and could not see him. (Reed Depo. at 102-103.)

As seen in the video, when Defendant Reed commanded the police dog Knox to bite Mr. Wesley, Mr. Wesley was not attempting to flee, was not armed, and posed no immediate threat to officer safety. After Mr. Wesley was taken to the ground, Defendant Reed commanded the police dog to continue biting him while he was face down on the sidewalk with his hands behind his back. Finally, after the incident, Defendant Reed falsely reported to his supervisor that he and others had been assaulted, while he conceded to a colleague that he did not see any other officers assaulted during the incident.

## II    DECEMBER 20, 2021 INCIDENT

On December 20, 2021, Defendant Reed responded to a domestic disturbance call involving Mr. Wesley. Mr. Wesley fled the area when he saw police arriving. Defendant Reed pursued Mr. Wesley, who was unarmed, with the police dog Knox through a wooded area. When Mr. Wesley exited the wooded area and attempted to enter a passing car, Defendant Reed released the police dog and commanded the dog to bite Mr. Wesley, causing severe injury to his arm.

Defendant Reed's claim that Mr. Wesley was violent or posed any threat to the officers in not only disputed, but is directly contradicted by the stipulated and undisputed evidence. Mr. Wesley was unarmed and was wanted only for a misdemeanor. Mr. Wesley contends that Defendant Reed deployed Knox out of revenge for past incidents and allowed the dog to continue biting him for an unreasonable amount of time even after Mr. Wesley went to the ground.

## LEGAL STANDARD

"Under Rule 56 of the Federal Rules of Civil Procedure, '[a] party may move for summary judgment, identifying each claim or defense ... on which **summary judgment** is sought.'" *Wright v. Ferguson*, No. 22-cv-00395, 2023 WL 6304687, 2023 U.S. Dist. LEXIS 174081, at 5 (W.D. Va. Sep. 26, 2023) (quoting Fed. R. Civ. P. 56(a)). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "A *'genuine issue of material* fact' exists when evidence that would be admissible at trial, viewed in the light most favorable to the nonmoving party, 'is such that a reasonable jury could return a verdict for the nonmoving party' on a disputed 'fact[] that might affect the affect the outcome of the suit under the governing law[.]'" *U.S. Bank Trust N.A. v. Haring*, No. 19-cv-00088, 2022 WL 2287568, 2022 U.S. Dist. LEXIS 114412, at 2-3 (W.D. Va. June 24, 2022) (emphasis in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party bears the 'initial responsibility' of showing that there is no genuine issue of material fact." *Wright*, 2023 U.S. Dist. LEXIS 174081, at 5-6 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the moving party meets that threshold burden, the nonmoving party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.*, at *6 (quoting *Anderson*, 477 U.S. at 248). "In evaluating a motion

for summary judgment, the court must view the record in the light most favorable to the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248).

# LAW AND ARGUMENT

## III THERE ARE GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING WHETHER DEFENDANT'S USE OF FORCE WAS EXCESSIVE.

Defendant's motion for summary judgment must be denied because the undisputed evidence raises genuine issues of material fact in that a properly instructed jury watching the video recordings of the incidents in question could conclude from the video evidence alone that Reed's use of force was excessive under the circumstances in each case. The Fourth Amendment prohibits the use of excessive force during an arrest, and whether force is excessive depends on the facts and circumstances of each case.

Regarding the March 11, 2021 incident, material facts are in dispute about: (i) whether Mr. Wesley posed any threat to officer safety at the time Defendant Reed commanded the police dog to bite him; (ii) whether Mr. Wesley was actively resisting arrest or merely questioning why he was being arrested; (iii) whether the deployment of a police canine was proportionate to the need for force under the circumstances; (iv)whether Defendant Reed allowed Knox to continue biting Mr. Wesley after he was subdued and no longer resisting; and (v) whether Defendant Reed's actions were motivated by a prior incident with Mr. Wesley.

Mr. Wesley was the subject of a misdemeanor arrest warrant. Defendant Reed, though not assigned to the warrant, self-dispatched to the scene upon hearing radio traffic, motivated by a prior personal altercation with Plaintiff in 2017. Defendant Reed arrived at Plaintiff's residence on Grace Street with a police dog named Knox.

Body-camera timestamps show:

- **13:13:25**: Defendant Reed approached the passenger side of the truck with Knox.

- **13:13:27**: Defendant Reed ordered Plaintiff to exit; Plaintiff complied within five seconds.

- **13:13:42**: Two other officers arrived and placed hands on Plaintiff, who was unarmed.

- Plaintiff repeatedly asked what the warrant was for; officers refused to inform him.

- Officers gave conflicting commands ("hands on the truck" vs. "hands behind your back"), causing confusion but not resistance.

- At **13:14:04**, while Plaintiff complained of pain, Defendant Reed threatened to deploy Knox unless Plaintiff stopped "fighting."

- At **13:14:48**, Defendant Reed, without any request for assistance by the officers involved, actually pushed an officer out of the way just before he commanded the police dog to bite Mr. Wesley.

- At **13:14:59**. while Mr. Wesley was face-down down on the sidewalk, Defendant Reed ordered the police to continue to bite Mr. Wesley.

The issue of whether or not Mr. Wesley was "fighting" to the extent necessary to command a dog to bite when Defendant Reed commanded the police dog to bite him is a crucial issue in dispute. Mr. Wesley contends he was cornered by two officers and pinned in the hinge of the truck door, with no path of escape, when Defendant Reed released Knox to bite. The dog continued biting even after Plaintiff was forced face-down. Plaintiff was handcuffed while being bitten and sustained deep lacerations requiring medical care.

Mr. Wesley contends he was cornered by two officers and pinned in the hinge of the truck door, with no path of escape, when Defendant Reed released Knox to bite. The dog continued

biting even after Plaintiff was forced face-down. Plaintiff was handcuffed while being bitten and sustained deep lacerations requiring medical care.

The body camera footage does not conclusively resolve these factual disputes. While it shows Mr. Wesley resisting being handcuffed, it also shows that he was surrounded by five armed officers, was already partially handcuffed, and was cornered with no path of escape when Defendant Reed deployed Knox. A reasonable jury could find that deploying a police canine under these circumstances constituted excessive force. Mr. Wesley alleges he cooperated, repeatedly asked *why* he was being arrested, and did not assault any officer; the Complaint says officers refused to inform him of the nature of the warrant and that he was pinned in the truck door before Defendant Reed ordered the dog. Defendant Reed's statement that Plaintiff actively resisted and elbowed him is disputed by Plaintiff and must be decided by the jury, particularly given inconsistencies between Defendant Reed's post-incident statements and body-cam recordings. Compare Complaint ¶¶ (facts alleging refusal to identify charges and being pinned) with Defendant's statement of facts.

Similarly, in the December 20, 2021 material facts are in dispute regarding the December 20, 2021 incident including: whether Mr. Wesley posed any threat to officer safety when Defendant Reed commanded the police dog to bite Mr. Wesley; whether Mr. Wesley's flight from officers justified the use of a police canine; whether Defendant Reed allowed the police dog to continue biting Mr. Wesley for an unreasonable amount of time; and whether Defendant Reed's actions were motivated by revenge rather than legitimate law enforcement purposes.

Mr. Wesley asserts he was unarmed, already controlled by multiple officers, and that the deployment of the police dog was retaliation based on Defendant Reed's prior history with Plaintiff. These facts are explicitly pleaded. Defendant Reed's "dangerousness" rationale

depends on his personal history with Plaintiff (2017 encounter) — a subjective basis that cannot defeat a § 1983 claim if an objective officer would not reasonably perceive a threat. The record contains evidence that a properly instructed jury could accept to conclude the use of the police dog against Mr. Wesley was unreasonable. This possibility is augmented by Defendant's Reeds false and inconsistent statements to his supervisor.

Mr. Wesley also alleges the dog continued to bite after he was face-down with hands behind his back and that Defendant Reed commanded the dog and later gave conflicting accounts. Defendant Reed contends he ordered the dog off promptly and that any delay was de minimis (he claims he began release commands within ~12–13 seconds). But the precise timing and effect of Defendant Reed's commands (and whether he actively tried to stop continued bites) are disputed and turn on video and witness credibility. Those are jury issues.

The *Graham v. Connor* factors weigh heavily in Mr. Wesley's favor:

- With regard to the severity of the crime alleged, Mr. Wesley was wanted only on a misdemeanor warrant.

- With regard to whether the suspect posed a threat to the safety of the officers or others, the video shows that when Defendant Seth Reed commanded the police dog to bite, Mr. Wesley was unarmed, unable to move and was surrounded on all sides by police officers who had grasp of his arms and none of whom had requested assistance in his apprehension. While Defendant Reed had a previous violent encounter with Mr. Wesley, his subjective belief is not the proper standard under which to analyze any of the *Graham v. Connor* factors. Looking at the video evidence, a properly instructed jury could conclude that none of the officers or the public were in danger.

- With regard to whether or not Mr. Wesley was "actively resisting" the officers to the extent required to justify being bitten by a police dog, a properly instructed jury could conclude that Mr. Wesley was confused because the officers gave him conflicting instructions and refused to tell him why they were arresting him and that he could not comply with the request to put his hands behind his back because the officers were causing him pain. There is certainly no basis to conclude that Mr. Wesley any flight risk.

Because Defendant Reed's motion assumes his version of events and converts credibility disputes into facts, the motion must be denied. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) — a jury must weigh disputed evidence; summary judgment is improper where reasonable jurors could differ. These factual disputes must be resolved by a jury, not on summary judgment.

## IV     DEFENDANT REED IS NOT ENTITLED TO QUALIFIED IMMUNITY

Defendant Reed is not entitled to qualified immunity because the law was clearly established that deploying a police canine against a non-violent misdemeanor suspect who poses no immediate threat to officer safety violates the Fourth Amendment. The right to be free from excessive force was clearly established at the time of both incidents. The use of force must be proportionate to the threat posed. The deployment of a police canine constitutes a significant use of force that can only be justified by a corresponding threat; and officers may not use significant force against suspects who are not actively resisting arrest or posing an immediate threat to officer safety.

A reasonable officer in Defendant Reed's position would have known the use of force was excessive. Further, a reasonable officer in Defendant Reed's position would have known that deploying a police canine against Mr. Wesley under the circumstances of both incidents violated clearly established law. In the March 11, 2021 incident, Mr. Wesley was surrounded by five

officers, partially handcuffed, and posed no immediate threat. In the December 20, 2021 incident, Mr. Wesley was unarmed and wanted only for a misdemeanor violation of a protective order.

Defendant Reed asserts qualified immunity because (he says) no clearly established law prohibited his actions. Qualified immunity is a question of law only *after* the court assumes the plaintiff's version of the facts shows a constitutional violation. Here, Plaintiff presents facts that, taken as true, would show an unreasonable, gratuitous police dog attack on a restrained person. Because the parties dispute key predicate facts — whether Plaintiff was subdued / handcuffed / posed a threat, and whether Defendant Reed ordered or prevented the continued bite — the Court cannot properly decide qualified immunity now: factual disputes preclude resolving the constitutional-violation prong. *Tolan v. Cotton*, 572 U.S. 650 (2014) (take plaintiff's version and decide law). See the Complaint and Defendant Reed's memo (which assumes defendant's version).

Even on the "clearly established" question (if the Court reaches it), Plaintiff identifies precedent and common-sense Fourth Amendment doctrine that an officer may not use severe force against a restrained person who poses no threat. Reed's own memo cites the Graham line and cases -- indicating the law is not novel; a reasonable officer would understand that siccing a dog on a face-down, surrounded, partially restrained person is unconstitutional. Defendant Reed cannot obtain immunity if reasonable jurors could find his conduct was objectively unreasonable

## V    GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING MR. WESLEY'S STATE LAW CLAIMS

Virginia tort claims for assault/battery and gross negligence track the Fourth Amendment analysis; because the federal claims survive summary judgment, the state claims likewise should proceed. Defendant Reed is not entitled to judgment on state immunity grounds where disputed

facts leave open whether his force was reasonable or was exercised in bad faith or in a wanton manner. Defendant Reed's memo argues good-faith immunity; but the Complaint alleges malicious, sadistic use of the dog and fabrication of reports. Those allegations, if accepted by a jury, defeat state good-faith immunity.

Because the federal excessive-force claim survives, the parallel tort claims for assault, battery, and gross negligence also survive. *See Rowland v. Perry*, 41 F.3d at 174 (4th Cir. 1994) Virginia's good-faith immunity does not shield officers acting with malice or bad faith. P*arker v. McCoy*, 212 Va. 808, 813 (1972). The evidence supports a finding of malice.

### A    ASSAULT AND BATTERY

Under Virginia law, a police officer may use reasonable force to effect an arrest, but the use of excessive force constitutes assault and battery. Genuine issues of material fact exist regarding whether Defendant Reed's use of force was reasonable under the circumstances, precluding summary judgment on Mr. Wesley's assault and battery claims.

### B    GROSS NEGLIGENCE

Similarly, genuine issues of material fact exist regarding whether Defendant Reed's actions constituted gross negligence. A reasonable jury could find that Defendant Reed's command to his police dog to bite Mr. Wesley showed a reckless disregard for Mr. Wesley's rights and safety.

### C    MALICIOUS PROSECUTION

Defendant Reed charged Plaintiff with felony assault on a law-enforcement officer, claiming Plaintiff elbowed him. Body-camera footage and witness statements refute this allegation. Mr.

Wesley spent three months in jail before posting bond, and the charge was later dismissed *nolle prosequi* on December 14, 2022.

With regard to Mr. Wesley's malicious prosecution claim, genuine issues of material fact exist about whether Defendant Reed had probable cause to charge Mr. Wesley with assault and battery on a law enforcement officer following the March 11, 2021 incident. The body camera footage does not conclusively show that Mr. Wesley assaulted Defendant Reed, and the charge was ultimately dismissed by *nolle prosequi*.

Defendant Reed argues the felony prosecution was supported by probable cause and that the *nolle prosequi* does not necessarily imply innocence. But Defendant Reed's own motion confirms (1) the Commonwealth dismissed by *nolle prosequi* and (2) Defendant Reed gave conflicting in-field accounts. The elements of a § 1983 malicious prosecution claim in the Fourth Circuit require: (1) seizure pursuant to legal process unsupported by probable cause; (2) termination in favor of plaintiff; and (3) the officer's causal role. *Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012) (cited in Defendant Reed's memo). Defendant Reed urges that *nolle prosequi* does not automatically show innocence, but Plaintiff may present evidence showing the dismissal here was consistent with innocence (*e.g.*, inconsistent officer statements, exculpatory video, lack of injuries to officers), and the jury should decide this issue.

Defendant Reed's probable cause position rests on his after-the-fact version (*e.g.*, an alleged elbow). That is controverted by Plaintiff and the video evidence; when the facts are contested, probable cause is a jury question, especially given that Defendant Reed concedes that Mr. Wesley could not even see Defendant Reed when his elbow allegedly made contact with him while he was being bitten by the police dog that Defendant Reed had just sicced on him.. See Defendant Reed memo acknowledgment of the *Evans/Durham* test — but the evidentiary disputes prevent

summary resolution.

# CONCLUSION

For the foregoing reasons, and based upon the Complaint, the video evidence, depositions, and the record as developed, Plaintiff respectfully requests that the Court:

1. **DENY** Defendant Reed's Motion for Summary Judgment in its entirety; or, in the alternative,

2. **DENY** summary judgment as to (a) Counts I–III (§ 1983 excessive force and malicious prosecution), and grant the related state-law battery/gross-negligence counts; and

3. **GRANT** such other relief as is just and proper, including leave for limited discovery tailored to the municipal, training, and prosecution-related records identified above if any gaps remain.

Respectfully Submitted.

**CALVIN WESLEY**

By Counsel


JAMES RIVER LEGAL ASSOCIATES
7601 Timberlake Road
Lynchburg, Virginia 24502
P (434) 845-4529
F (434) 845-8536

By: /s/ M. Paul Valois
　　M. Paul Valois, Esquire
　　Counsel for Plaintiff
　　Virginia State Bar No. 72326
　　mvalois@vbclegal.com

McFADGEN LAW, PLC
3521 Campbell Avenue
Lynchburg, Virginia 24501
Telephone: (434) 385-4579
Facsimile:　(434) 900-2008

By: /s/ Steven D. McFadgen, Sr.
    Steven D. McFadgen, Sr., Esq.
    Counsel for Plaintiff
    Virginia State Bar No. 83273
    muchmorelaw@gmail.com

## CERTIFICATE OF SERVICE

    I hereby certify that on the 18th day of February, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Jim H. Guynn, Jr. (VSB #22299)
John R. Fitzgerald (VSB #98921)
Guynn, Waddell, P.C.
415 S. College Avenue
Salem, Virginia 24153
Telephone: 540-387-2320
Facsimile: 540-389-2350
jimg@guynnwaddell.com
johnf@guynnwaddell.com
*Counsel for Defendants*

    /s/ M. Paul Valois
    JAMES RIVER LEGAL ASSOCIATES
    7601 Timberlake Road
    Lynchburg, Virginia 24502
    Telephone: (434) 845-4529
    Facsimile: (434) 845-8536
    mvalois@vbclegal.com
    *Counsel for Plaintiff*

    s/ Steven D. McFadgen, Sr._____
    Steven D. McFadgen Sr., Esq. (VSB# 83273)
    McFadgen Law, PLC
    3831 Old Forest Road, Suite 6
    Lynchburg, Virginia 24501
    Telephone: (434) 385-4579
    Facsimile: (434) 900-2008
    muchmorelaw@gmail.com
    *Counsel for Plaintiff*